[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14240

_____

D.C. Docket No. 6:10-cv-00280-ACC-GJK

ANESH GUPTA,

                                                            Plaintiff-Appellant,

versus

RICHARD T. MCGAHEY, Senior Special Agent,
U.S. Immigration and Customs Enforcement,
TIMOTHY WARGO, Supervisory Special Agent,
U.S. Immigration and Customs Enforcement,
JOHN KAUFMAN, Special Agent,
U.S. Immigration and Customs Enforcement,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 15, 2013)

Before WILSON and COX, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

Anesh Gupta appeals the district court's dismissal of his *Bivens* action for lack of subject-matter jurisdiction. Gupta's Complaint alleges that three U.S. Immigration and Customs Enforcement agents violated his Fourth and Fifth Amendment rights when they arrested and detained him in connection with the initiation of removal proceedings against him. The district court concluded that it lacked subject-matter jurisdiction to hear Gupta's claims under 8 U.S.C. § 1252(g) because all of his claims arise from the agents' decision or action to commence removal proceedings. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Anesh Gupta, a citizen of India, entered the United States with a B-2 nonimmigrant visa on December 1, 2001. The visa authorized him to stay until June 16, 2002. About two weeks before his visa expired, he married a woman named Laura Schultz in Illinois. Schultz filed an I-130 form application to adjust Gupta's status, and Gupta obtained an Employment Authorization Document allowing him to work in the country while the application pended. Gupta then secured employment as an intern at the Walt Disney World resort in Orlando, Florida, in May 2003. The resort hired him as a part-time employee in 2005.

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

Beginning in 2005, Gupta became involved in a number of legal disputes stemming from his employment. He also filed several complaints with the U.S. Immigration and Customs Enforcement (ICE)—and, at one point, the President of the United States—regarding what he claims were the resort's violations of U.S. immigration laws.

U.S. Citizenship and Immigration Services denied Schultz's application to adjust Gupta's immigration status in July 2009. Following the denial, ICE agent Richard McGahey, who had been investigating the complaints Gupta filed against the resort, prepared a Record of Deportable Alien and a notice to appear for removal proceedings. McGahey also sought an administrative arrest warrant from his supervisor, Timothy Wargo. McGahey recommended that Gupta be arrested and detained without bond pending a removal determination because of Gupta's "escalating delusion" and continued focus on the Disney World management, the resort's importance as a "Critical Infrastructure asset," and Gupta's potentially dangerous knowledge of the resort's infrastructure. (R.1-31, Ex. 3 at 3–4.) Wargo approved the arrest warrant on August 6, 2009. The next day, McGahey, Wargo, and ICE agent John Kaufman went to Gupta's apartment, delivered the notice to appear, and executed the arrest warrant. This case arises out of Gupta's arrest and subsequent detention.

We turn now to the allegations in the Complaint, which we take as true in this appeal. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (recognizing that when a defendant moves to dismiss a claim for lack of subject-matter jurisdiction by challenging the complaint on its face, the reviewing court must take the complaint's factual allegations as true).  Agents McGahey, Wargo, and Kaufman placed Gupta in handcuffs, searched his apartment and car, and seized several items of personal property, including his employment identification, name tag, annual resort pass, apartment key, car key, and mailbox key.  Wargo and Kaufman then drove Gupta to a detention center.  Gupta was "later" taken by a Department of Homeland Security bus to a detention center in Miami.  He was then released on bond on September 11, 2009, and he alleges that several documents were missing from his apartment when he returned to it.  He also claims that he never received his apartment, car, or mailbox keys that the agents seized at the time of the arrest.

Gupta alleges that, in taking these actions, the agents violated his rights under the Fourth and Fifth Amendments by wrongfully procuring a warrant for his arrest, arresting him unlawfully, illegally searching his apartment and car, illegally seizing his personal items, and wrongfully detaining him following the arrest until September 11, when he was released on bond.  Under *Bivens v. Six Unknown*

*Named Agents*, 403 U.S. 388, 91 S. Ct. 1999 (1971), he seeks declaratory relief and monetary damages in excess of $10 million.

The district court dismissed the action. The court recognized that 8 U.S.C. § 1252(g) precludes its subject-matter jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under" the immigration laws. Reasoning that Gupta's claims arise from a decision or action to commence removal proceedings, the court concluded that it had no subject-matter jurisdiction and dismissed the case. The court also determined that to allow a *Bivens* action in this context would improperly disrupt pending immigration proceedings; the court declined to allow the action.

## II. ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Gupta challenges the district court's conclusion that it lacked subject-matter jurisdiction under § 1252(g). He also argues that the district court should have recognized his *Bivens* action in this context.

We review de novo a district court's determination of whether it has subject-matter jurisdiction. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008). We conclude that Gupta's claims arise from the actions taken to commence removal proceedings against him within the meaning of § 1252(g). We therefore

do not reach the question of whether to recognize a *Bivens* action under these circumstances.

### III. DISCUSSION

Federal courts lack subject-matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

On appeal, Gupta argues that this section does not cover his claims because (1) McGahey's procurement of an arrest warrant, (2) Gupta's arrest, (3) Gupta's detention, (4) the agents' search of Gupta's apartment and car, and (5) McGahey's seizure of Gupta's personal items did not "arise from" any decision or action to commence proceedings, adjudicate cases, or execute removal orders against him. We disagree.

Section 1252(g) is unambiguous: it bars federal courts' subject-matter jurisdiction over any claim for which the "decision or action" of the Attorney General (usually acting through subordinates) to commence proceedings, adjudicate cases, or execute removal orders is the basis of the claim. Securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings. Each of Gupta's claims allege, as his direct injury, an

action taken to secure him and prevent the perceived threat he posed to Disney World while he awaited a deportation hearing.

Gupta's claims that McGahey illegally procured an arrest warrant, that the agents illegally arrested him, and that the agents illegally detained him each arise from an action taken to commence removal proceedings. In his Record of Deportable Alien, McGahey explained the reasons why he considered Gupta a threat to Disney World, a "Critical Infrastructure asset," and recommended that Gupta be arrested and detained without bond pending a removal determination. Wargo then issued the warrant on that basis, and the agents arrested and detained him pursuant to the warrant. These actions were taken in an effort to secure Gupta and prevent potential danger to Disney World while he awaited a determination of his removal. Each of these claims, then, challenges the actions the agents took to commence removal proceedings—exactly the claims that § 1252(g) bars from the subject-matter jurisdiction of federal courts.

Gupta's claims that the agents illegally searched his apartment and illegally seized certain items of his personal property also arise from actions taken to commence proceedings. Gupta's Complaint alleges that the agents searched his apartment and located and seized his employment identification, name tag, annual Disney World pass, and keys to his apartment, mailbox, and car. Each of these items provides Gupta access to the resort. Seizing the items logically comports

with the reason for Gupta's arrest: to eliminate the perceived threat Gupta posed against Disney World while Gupta waited for a deportation hearing. Gupta's claims that allege injuries resulting from the search of the apartment for these items and the seizure of these items necessarily arise from actions taken to secure him and prevent the perceived threat he posed pending a hearing.

## IV. CONCLUSION

Because all of Gupta's claims challenge actions taken to commence removal proceedings, § 1252(g) strips the federal courts of subject-matter jurisdiction. We therefore affirm the district court's dismissal.

AFFIRMED.